# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-0039V**

| | |
|---|---|
| PATRICK MAHONEY,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 21, 2026 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On January 11, 2023, Patrick Mahoney filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that he suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on December 16, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent determined that the case was not appropriate for compensation, and the parties have briefed the disputed factual questions (ECF Nos. 23, 24). For the reasons

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

set forth below, I determine that the record preponderantly supports a finding that Petitioner's shoulder pain likely began within 48 hours of vaccination; that neither pre-vaccination shoulder pain nor another condition would likely explain his post-vaccination symptoms; and that his pain was primarily limited to the shoulder in which he received the vaccine.

## I. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II. Findings of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4(c) Report, and additional evidence filed. Specifically, I highlight the following evidence:

*Pre-vaccination records*

- Petitioner has submitted pre-vaccination primary care records dating back to April 2019 (Ex. 3 at 5-40), and pre-vaccination Veterans Administration Medical Center ("VA") records back to January 2018 (Ex. 7 at 68-221). None include complaints of shoulder pain or positive examination findings relating to Petitioner's shoulders.

*Vaccination and subsequent records and other evidence*

- Petitioner received a flu vaccine in his left deltoid on December 16, 2021. Ex. 1 at 1. The vaccine was administered during an appointment with his primary care provider ("PCP"). Ex. 3 at 40. At this appointment, Petitioner did not report any joint problems, and none were found on examination. *Id*. at 40-41.
- Six days later (December 22, 2021), Petitioner was seen at a VA primary care center to follow up on unrelated chronic medical conditions. Ex. 7 at 61-62. He also reported foot pain and requested to see a podiatrist. *Id*. The examination section of the record indicates that his extremities were "[n]egative," with no further details. *Id*. at 64. The record does not mention Petitioner's shoulder.

- On January 11, 2022, Petitioner saw a pain specialist to establish care for his chronic back pain. Ex. 5 at 8. The record notes that he "has other complaints, including bilateral shoulder pain. He states he has severe arthritis and rotator cuff disease, and has participated in physical therapy with no relief" – possibly suggesting that he attended physical therapy ("PT") for *shoulder* pain. *Id*. Petitioner also reported knee and hip pain. *Id*. The examination section of this record does not indicate that either shoulder was examined. *Id*. at 13-14. Petitioner was assessed with chronic pain of both shoulders as well as several unrelated diagnoses. *Id*. at 7. The pain specialist noted Petitioner's chronic back pain and stated that he "had five trials of physical therapy in the past 2 years through the VA," with only short-term symptom relief – appearing to suggest that he attended PT for treatment of *back* pain. *Id*.

- On February 3, 2022 (now 49 days after vaccination), Petitioner messaged his PCP reporting left shoulder pain. Ex. 2 at 1. He stated that the top portion of his shoulder, "in the exact location where I received the flu shot" constantly felt "like I just received the shot." *Id*. He had expected the achy feeling to go away, but it persisted. *Id*. He stated there was "no doubt in my mind that it started and has continued since the shot was administered." *Id*. He concluded that he planned to discuss his shoulder pain at his appointment the following month, if it had not resolved by then. *Id*.

- Petitioner saw his PCP on March 16, 2022, for a routine follow up on unrelated health conditions. Ex. 3 at 42. Petitioner also reported at this time that he was "still having pain and tingling in his [left shoulder] after the flu shot that he had a few [months] ago," although it had improved somewhat. *Id*. His range of motion ("ROM") was restricted, and he could not lay on his left shoulder. *Id*. On examination, his PCP found that his left shoulder exhibited decreased ROM. *Id*. at 43. Petitioner was assessed with rotator cuff tendinitis and referred to an orthopedist. *Id*. at 44.

- Two weeks later (March 31, 2022), Petitioner saw an orthopedist for "[l]eft shoulder pain after flu shot dec 16th 2021." Ex. 4 at 27. Petitioner explained that he received a flu vaccine in his left shoulder and "immediately had pain" that "felt like a hot poker was at the injection site." *Id*. He had "continued to have discomfort in the left shoulder since that time," along with some paresthesias in his left forearm and hand and "tingling from the left elbow area into the left forearm and hand." *Id*. Petitioner reported a history of hip surgery, quadriceps repair, left meniscal surgery, back pain, and neck pain, but did not report any history of shoulder pain. *Id*. On examination, Petitioner's left shoulder exhibited "limited internal and external rotation by about 50% and he has a lot of discomfort with this." *Id*. The orthopedist noted that it was difficult to fully assess Petitioner's

rotator cuff because of his decreased ROM. *Id*. Petitioner exhibited negative Tinel's signs in his left elbow and wrist, but a positive Durkan's test in his left wrist, suggesting carpal tunnel syndrome.[3] *Id*. at 28. Left shoulder x-rays revealed "some early glenohumeral arthritis and some acromioclavicular arthritis," but were otherwise negative. *Id*. The orthopedist assessed Petitioner with left shoulder subacromial bursitis, pain, and osteoarthritis, as well as left carpal tunnel syndrome, and provided home exercises and administered a steroid injection into Petitioner's left shoulder. *Id*. at 28-29.

- Petitioner returned to the orthopedist on May 3, 2022, reporting that his left shoulder pain and paresthesias in his left arm were improving following the steroid injection and home exercises. Ex. 4 at 54. Petitioner was given oral anti-inflammatory medication. *Id*. at 55.
- On June 24, 2022, Petitioner was seen in a VA primary care clinic for chronic conditions, reporting that he was "doing well with the exception of some chronic left shoulder pain," which was being treated by an orthopedist. Ex. 7 at 43.
- Petitioner followed up with the orthopedist about his left shoulder pain on June 30, 2022. Ex. 4 at 81. He reported that his left shoulder had been "getting somewhat better," but requested another steroid injection, which was administered that day. *Id*. at 82-83.
- On August 15, 2022, Petitioner returned to the orthopedist concerning his left shoulder pian. Ex. 4 at 107. On examination, his left shoulder ROM was 145 degrees in forward flexion. *Id*. at 108. Petitioner was directed to follow up on an as-needed basis if he continued to experience problems. *Id*. at 109.
- Petitioner filed two declarations in support of his claim. Exs. 6, 8. He states that the "vaccination itself was painful." Ex. 6 at ¶ 3. The pain persisted, but he assumed it was residual soreness that would subside on its own. *Id*. at ¶ 4. Over time, the pain began to radiate down his left arm and up into his neck and upper back, "even as far as my opposite shoulder at times," though the worst pain remained in his left shoulder. *Id*. When he saw a pain specialist in early January 2022, the specialist was "dismissive, did not perform any physical examinations of my body, and did not accurately document my complaints." *Id*. at ¶ 5. Petitioner states that the specialist wrote that Petitioner had done PT for rotator cuff disease, but that Petitioner has "never been diagnosed with rotator cuff disease and [has]

[3] The Tinel's signs test seeks to evaluate nerve compression or damage, and can be used to assess for carpal tunnel syndrome or cubital tunnel syndrome. Tinel's Sign, https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last visited July 21, 2026); Durkan's test is used to diagnose carpal tunnel syndrome. Durkan's Test, https://www.handsurgeryresource.net/durkans-test (last visited July 21, 2026).

> only ever participated in physical therapy related to my hips." *Id*. Petitioner adds that he has "never received any medical treatment related to either shoulder until after receiving the vaccination in 2021." Ex. 8.

*Onset of Shoulder Pain*

Petitioner emphasizes that he first reported shoulder pain to his PCP 49 days after vaccination. Petitioner's Motion for a Factual Ruling, filed April 21, 2025, at *7-8 (ECF No. 23) ("Mot."). While admitting he attended two intervening medical appointments without mention of this problem, Petitioner asserts that "claimants may often misperceive the extent of their shoulder injury, or downplay its significance, leading them to delay treatment." Mot. at *8. And the record contains no evidence suggesting a later onset of pain. *Id*.

Respondent contends that Petitioner has not established that the onset of his shoulder pain occurred within 48 hours of vaccination. Response, filed April 25, 2025, at *6 (ECF No. 24) ("Resp."). Respondent notes that Petitioner did not report shoulder pain until 49 days after vaccination despite two earlier opportunities to do so. Resp. at *6.

The aforementioned medical records and testimonial evidence, reviewed in their totality, establish that Petitioner's shoulder pain likely began within in 48 hours of vaccination. Although Petitioner did not report his injury for over a month and a half, and did not see a healthcare provider for it until three months post-vaccination, such delay is not uncommon in SIRVA cases. *Tully v. Sec'y of Health & Human Servs*., No. 21-1998V, 2024 WL 4533515 (Fed. Cl. Spec. Mstr. Sept. 20, 2024) (finding onset occurred within 48 hours although claimant did not seek care for two and a half months); *Diaz v. Sec'y of Health & Human Servs.*, 20-1003V, 2023 WL 8440873, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2023) (finding onset occurred within 48 hours where the petitioner delayed seeking care for over three months after vaccination); *Buck v. Sec'y of Health & Human Servs*., No. 19-1301V, 2023 WL 6213423, at *7 (Fed. Cl. Spec. Mstr. Aug. 23, 2023) (finding onset of pain occurred within 48 hours where the petitioner did not seek care for over three months and noting that a delay in seeking care is relevant to onset, but not dispositive).

I acknowledge that Petitioner was seen twice in the interim without mentioning vaccine-related shoulder pain. However, he explains that he thought his pain would resolve on its own. Ex. 6 at ¶ 4. That he did not seek care earlier is relevant for damages, suggesting a less severe injury, but does not defeat his claim.

*Whether Petitioner Had a History of Left Shoulder Pain, or Another Condition, that Would Explain His Post-Vaccination Symptoms*

Petitioner argues that the record establishes that he had no history of pain, inflammation, or dysfunction of his left shoulder that would explain his post-vaccination symptoms. Mot. at *9-10. Petitioner also contends that there is no evidence suggesting that Petitioner's left shoulder osteoarthritis or carpal tunnel syndrome, or any other condition, would explain his post-vaccination symptoms. *Id*. at *9.

Respondent emphasizes that a pain specialist Petitioner saw in January 2022 and diagnosed Petitioner with chronic bilateral shoulder pain and rotator cuff disease, suggesting pre-existing shoulder pain. Resp. at *6. Furthermore, Respondent asserts that Petitioner's diagnoses of chronic left shoulder pain and osteoarthritis would explain his symptoms, preventing him from satisfying the fourth criterion. *Id*.

The *only* evidence suggesting that Petitioner experienced left shoulder pain prior to vaccination is the January 2022 pain specialist record, which states that he had bilateral shoulder pain with no further details, and does not indicate that *either* shoulder was examined. Petitioner explains that the pain specialist "did not accurately document [his] complaints," explaining that he had previously never been diagnosed with rotator cuff disease, or received *any* treatment for either shoulder, and had undergone PT only for his hips. Ex. 6 at ¶ 5; Ex. 8. This contention is supported by the years of pre-vaccination medical records, *none* of which document complaints or treatment for his left shoulder. As such, it is more likely than not that Petitioner did *not* have a history of left shoulder pain that would explain his post-vaccination symptoms.

*Whether Petitioner's Shoulder Pain was Primarily Limited to his Left Shoulder*

Respondent argues that Petitioner reported pain outside of his left shoulder, down his left arm, up into his neck and upper back, and even to his right shoulder. Resp. at *6. I have previously found that references to symptoms originating in a claimant's shoulder and resulting in incidental symptoms elsewhere do not necessarily prevent satisfaction of this SIRVA element. *See Valdez v. Sec'y of Health & Human Servs*., No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original).

In this case, Petitioner at times reported pain extending to his left forearm and hand, and to his neck, upper back, and right shoulder. However, in each such circumstance, he described the pain as *originating in* his shoulder. Therefore, the record supports a finding that his pain was primarily limited to his left shoulder.

In light of these findings, Petitioner is encouraged to promptly serve a demand and engage Respondent in negotiations.

**Scheduling Order**

- **Petitioner shall file, by no later than Monday, August 31, 2026, a status report providing an update on the parties' discussions, including whether and when Petitioner has served a demand and whether there are any updated medical records.**
- **Respondent shall file, by no later than Wednesday, September 09, 2026, a status report indicating whether he is willing to engage in tentative discussions concerning settlement or proffer or remains opposed to negotiating at this time; and stating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master